UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
NORTHERN DIVISION
AT COVINGTON

CIVIL ACTION NO. 13-109-DLB-JGW

J.R.                                                                          PLAINTIFF

VS.                          MEMORANDUM OPINION & ORDER

TERRI COX-CRUEY, ET AL.                                      DEFENDANTS

* * * * * * * * * * * * * * *

I.    INTRODUCTION

On August 9, 2013, the Court convened a hearing to discuss Plaintiff's Motion for
Automatic Preliminary Injunctive Relief (Doc. # 4) pursuant to the "stay put" provision of the
Individuals With Disabilities Education Act, and Defendants' Motion to Dismiss (Doc. # 6),
which have been fully briefed (Docs. # 7, 9-12).  Plaintiff J.R. was represented by Marianne
Schaefer Chevalier and Karen Hoskins Ginn, while Defendants Terri Cox-Cruey, Tracy
Mann, Karen Snelling, Karen Collins, Carl Wicklund, Bill Culbertson, Tamara Miano, Kenton
County Board of Education, Terry Holiday, and Johnny Collett (hereinafter referred to as
"the Kenton County Defendants") were represented by Suzanne Cassidy.   David
Wickersham also appeared on behalf of Defendant Kentucky Department of Education, and
the proceedings were recorded by Official Court Reporter Joan Averdick.

At the conclusion of the hearing, the Court **denied** Plaintiff's Motion for Automatic
Preliminary Injunctive Relief (Doc. # 4), and **denied** Defendants' Motion to Dismiss (Doc.
# 6) as **moot**.  In a nutshell, the Court concluded that providing free appropriate public

education to J.R. from this point forward would be inconsistent with Kentucky law and practice, thereby rendering the "stay put" provision inapplicable, and that the potential for compensatory education does not entitle her to entry of a "stay put" order. By way of this Opinion, the Court explains the rationale for its decision.

## II.  BACKGROUND

J.R. is a 21 year old female who suffered a traumatic brain injury as a result of an automobile accident in April 2010. (Doc. # 1, at 2). She has attended Dixie Heights High School within the Kenton County School District since January 4, 2012, and was served by an Individual Education Plan under the disability category of Traumatic Brain Injury. (*Id.*).

Having been notified that J.R. would no longer be eligible for such services upon her 21st birthday[1] (*Id.* at 3), J.R.'s parents, on her behalf, filed a request for a due process hearing on January 30, 2013, specifically seeking the following relief:

1) The assignment of a hearing officer;

2) An immediate determination that [J.R.] must stay-put in her current educational placement at Dixie Heights High School during the pendency of this action;

3) An Order requiring the Kenton County School District to allow [J.R.] to receive a free appropriate public education until at least her twenty-second birthday;

4) A finding that the termination of [J.R.]'s educational services prior to her twenty-second birthday is a denial of her right to a free appropriate public education;

5) An Order requiring the Kenton County School District to hereinafter make appropriate placement decisions for [J.R.] in accordance with 707 KAR 1:350;

---

[1]  J.R. turned 21 on February 28, 2013 (Doc. # 1, at 2).

6) Attorney fees for [J.R.]'s attorneys of record; and

7) All such other relief that the hearing officer may deem appropriate.

(Doc. # 1-1).   Paul Whalen was selected to serve as the hearing officer sometime thereafter.  (Doc. # 1-4).

On February 6, 2013, Mr. Whalen conducted a pre-hearing conference, at which time the parties agreed to mediation.  (*Id.*).  The hearing officer also ordered that J.R. would "stay put" at her current placement with the school district at least until the parties attempted mediation.  (*Id.*).  That mediation ultimately proved unsuccessful, which lead to further filings, motions and hearings.

On March 12, 2013, J.R. parents filed an amended due process request, adding three additional requests for relief:

> 1. An Order requiring the Kenton County School District to create a meaningful and appropriate transition plan for [J.R.] into an appropriate post secondary program based upon her physical, social and education needs;
>
> 2. An Order requiring the Kenton County School District to reimburse [J.R.]'s parents for all out of pocket expenses, related to [J.R.]'s educational needs, including transportation; and
>
> 3. An Order requiring the Kenton County School District to provide compensatory education to [J.R.] for the time in which she was denied a free appropriate public education.

(Doc. # 1-2).  During this time frame, representatives of the school district orally moved to dissolve the "stay put" order (Doc. # 1, at 4), which Mr. Whalen denied on March 29, 2013. (Doc. # 1-5).  More specifically, the hearing officer ordered that J.R. would "continue in her current educational placement until the end of the 2012-2013 school year" because her "21st birthday is in the middle of the 2012-2013 school year.  Kentucky Administrative Regulations and practice in the Commonwealth allow students to finish the school year in

which they turn age 21." (*Id.* at 3).

The parents filed another amended due process request on May 6, 2013, which alleged that "Kenton County School District failed to ensure that [J.R.] had an appropriate Individual Education Plan . . . , including extended school year services and related services, from the 2011-2012 school year until the present time." (Doc. # 1-3). Hearings then took place on May 21-22, 2013 (Doc. # 1, at 3), and the parents moved to extend the "stay put" order prior to the conclusion of the second day. (Doc. # 1-6); (Doc. # 1, at 4).

Contrary to his earlier orders, Mr. Whalen rejected the parents' request for an extension on June 12, 2013. (Doc. # 1-7). This was because "[J.R.]'s 2012-2013 academic school year ended on or about May 23, 2013. With the school year ending on May 23, 2013, the Stay Put Order expired." Another hearing was then held the next day. (Doc. # 1, at 3).

Based upon this denial, J.R.'s parents, on her behalf, commenced this action on June 21, 2013 against the Kenton County Defendants and the Kentucky Department of Education, essentially requesting the same relief as sought between the various due process requests:

> 1) That this Court reverse the decision of the Hearing Officer regarding "stay-put" and order that the Defendants and legal entities of Kenton County School District and Kentucky Department of Education immediately reinstate Plaintiff J.R. into the educational placement that she was in during the 2012-2013 school year pursuant to 20 U.S.C. 1415(j);
>
> 2) That this Court order that the Kenton County School District and the Kentucky Department of Education continue to provide such educational placement during the pendency of the due process action and any associated appeals;
>
> 3) That this Court award compensatory education to J.R. for any missed educational opportunities during the time in which she was denied "stay-put" relief;

4) That the Court grant J.R. leave to allege any and all averments related to her educational placement in any other appeal of the due process action or civil action that she may bring pursuant to 20 U.S.C. § 1415(i)(2)(A).

5) That this Court grant J.R. a trial de novo, or in the alternative, pursuant to 20 U.S.C. § 1415(i)(2)(C), the opportunity to present new evidence in addition to that adduced at the hearings mentioned herein;

6) That the Kentucky Department of Education file the complete transcript and records from the due process proceedings with this court forthwith;

7) For all other proper relief to which J.R. appears entitled;

8) That J.R. and her parents be permitted to proceed in pseudonym as indicated in this complaint to protect her identity;

9) For attorney fees and expenses on behalf of J.R. and her parents be paid by the Defendants in this matter.

(*Id.* at 10-11).  The underlying proceedings before Mr. Whalen concluded on July 2, 2013, at which time the hearing officer set forth a briefing schedule and indicated that he anticipated rendering a decision on the issues remaining before him by mid-October.  (Doc. # 4-1, at 3); (Doc. # 6-1, at 3 n.3).

The following day, J.R.'s parents moved for automatic preliminary injunctive relief (Doc. # 4) pursuant to the "stay put" provision of the Individuals With Disabilities Education Act, and the Kenton County Defendants then moved to dismiss.  (Doc. # 6).

## III.     ANALYSIS

### A.     THE "STAY PUT" PROVISION OF THE INDIVIDUALS WITH DISABILITIES EDUCATION ACT

Both motions concern the applicability of the "stay put" provision of the Individuals With Disabilities Education Act, which reads:

[D]uring the pendency of any proceedings conducted pursuant to this section, unless the State or local educational agency and the parents otherwise

agree, the child shall remain in the then-current educational placement of the child, or, if applying for initial admission to a public school, shall, with the consent of the parents, be placed in the public school program until all such proceedings have been completed.

20 U.S.C. § 1415(j).  As the statutory language suggests, this provision "functions, in essence, as an automatic preliminary injunction."  17A Fed. Proc. § 42:1569 (citation omitted); *see also Wagner v. Bd. of Educ. of Montgomery Cnty.*, 335 F.3d 297, 301 (4th Cir. 2003); *Drinker by Drinker v. Colonial Sch. Dist.*, 78 F.3d 859, 864 (3d Cir. 1996); *Zvi D. by Shirley D. v. Ambach*, 694 F.2d 904, 906 (2d Cir. 1982); *Williamson Cnty. Bd. of Educ. v. C.K.*, No. 3:07-0826, 2007 WL 3023616, at *6 (M.D. Tenn. Oct. 11, 2007).  And because it is automatic, "the party seeking it need not meet the usual requirements for obtaining preliminary injunctive relief."  *Wagner*, 335 F.3d at 301 (citation omitted); *see also Ambach*, 694 F.2d at 906 ("The [provision] substitutes an absolute rule in favor of the status quo for the court's discretionary consideration of the factors of irreparable harm and either a likelihood of success on the merits or a fair ground for litigation and a balance of hardships."); *Williamson*, 2007 WL 3023616, at *6 ("Contrary to the Board's contention here, the parent need not satisfy the four factors-likelihood of success on the merits, a showing of irreparable harm, balancing of the harms, and the public interest-ordinarily required to obtain a preliminary injunction.").

Based upon the foregoing, one might presume that this is an open-and-shut case in favor of J.R.'s parents.  However, "[w]hile the right under the "stay put" [provision] does not depend upon the merits or lack thereof of the issues presented by the handicapped student . . . , the right to continue to receive special education services does depend upon the continuing entitlement of the handicapped student to receive a public special

6

education." *Hilden v. Lake Oswego Sch. Dist. No. 7J*, No. CIV. 94-1117-FR, 1994 WL 519032, at *2 (D. Or. Sept. 20, 1994).  This entitlement is determined by Section 1412 of the Act.

   **B.   SECTION 1412 OF THE ACT**

   Section 1412 requires school districts that receive federal funding to provide "free appropriate public education . . . to all children with disabilities . . . between the ages of 3 and 21, *inclusive*." § 1412(a)(1)(A) (emphasis added).  Although the Sixth Circuit has not addressed the precise definition of "inclusive," the Court is instructed by the thorough analysis applied by the Second Circuit in *St. Johnsbury Acad. v. D.H.,* 240 F.3d 163 (2d Cir. 2001).  In that case the Second Circuit held that the use of the word "inclusive" in the Act, if it "is to mean something, as it must, it means that the relevant period begins on a child's third birthday and ends on the last day of his 21st year (which culminates in his 22nd birthday)." *Id.* at 168.  However, the "obligation to make a free appropriate public education available to all children with disabilities does not apply with respect to children aged . . . 18 through 21. . . to the extent that its application to those children would be inconsistent with State law or practice . . . respecting the provision of public education to children in [that] age range[]." § 1412(a)(1)(B)(I); *see also D.H.*, 240 F.3d at 169 (acknowledging the state-law exception).  This exception plays an important role in this case.[2]

_____

[2]  The state-law exception strikes a proper balance between assuring access to education for disabled children and the traditional role of states in formulating and executing educational policy.  *See generally Bd. of Educ. of Hendrick Hudson Cent. Sch. Dist., Westchester Cnty. v. Rowley*, 458 U.S. 176 (1982) (discussing the Education for All Handicapped Children Act, which is the predecessor to the Individuals With Disabilities Education Act); *see also Epperson v. State of Ark.*, 393 U.S. 97, 104 (1968) ("By and large, public education in our Nation is committed to the control of state and local authorities.").

In sum, the Act provides that a disabled child is entitled to free appropriate public education until his or her 22nd birthday, but States may impose different age restrictions if those limitations are applied broadly to general education students.  With this in mind, the Court will now explain the primary conclusion made at the hearing: Providing such education to J.R. from this point forward would be inconsistent with Kentucky law and practice.[3]

### C.   KENTUCKY LAW AND PRACTICE

#### 1.   The Law of the Commonwealth

Kentucky law does not mirror the Act.  Specifically, KRS 158.100 provides that "[a]n approved high school service for all children of high school grade under twenty-one (21) years of age residing in the district shall be provided either by maintaining the schools within the district or by contract with another district."  Stated differently, the Kentucky statute imposes a different age restriction than the Act, i.e., that school districts must provide education to a child until his or her 21st birthday.[4]

J.R.'s parents' arguments to the contrary are unpersuasive.  At the outset, the parents assert that there are "no clear laws prohibiting students (disabled or non-disabled) from attending school past the age of 21."  (Doc. # 4-1, at 6).  This assertion, though, misconstrues the state-law exception; the issue is not whether any Kentucky law *prohibits*

---

[3] The Court also rejected the Kenton County Defendants' exhaustion argument, as least in so far as it pertained to the request for a "stay put" order.  (*See* Doc. # 6-1).

[4] This is the same interpretation made by the United States Department of Education in "determin[ing] the age cohort for which each State will ensure the availability of [free appropriate public education] for school year 2007-2008."  OSEP Policy Memorandum 07-07, *available at* http://www.tadnet.org/pages/590.

students from attending school, but rather whether any Kentucky law *requires* school districts to accommodate such attendance.

The parents also rely upon two opinions from the Kentucky Attorney General interpreting the Kentucky statute, but neither undermine the Court's interpretation.  In the first, the Attorney General noted that "[t]his law requires the local school districts to afford pupils an opportunity to obtain a twelve grade education and so requires this at least until an individual reaches twenty-one years of age."  Ky. O.A.G. 76-678.  In the second, the Attorney General reiterated this interpretation and concluded that "a local school system must continue to provide an appropriate educational program for an exceptional child even though beyond the age of compulsory attendance."[5] Ky. O.A.G. 77-116.  Both opinions effectively reiterate that any obligation of Kentucky school districts ends upon a child's 21st birthday.

Finally, the parents point to two administrative regulations.  The first, which concerns pupil attendance, provides that "[a] local school district shall enroll any resident pupil, not holding a high school diploma, under the age of twenty-one (21) years of age who wishes to enroll," but that "[t]he days attended after the student's 21st birthday shall not be included in the calculation of the district's average daily attendance."  702 KAR 7:125 § 7(3).  The second, which concerns the Support Education Excellence in Kentucky (SEEK) funding formula, provides that the adjusted average daily attendance shall be determined by, among other things, subtracting "[t]he [average daily attendance] for over-age students and under-age students not qualifying for funding pursuant to" the first regulation.  702 KAR

_____

[5] *See infra* note 6.

3:270 § 2(3)(b).

Admittedly, both of these regulations contemplate a student receiving education beyond their 21st birthday.  Of course, this does not necessarily conflict with the statute, which, again, establishes the obligation of school districts in the Commonwealth (rather than any sort of prohibition).   These regulations simply accommodate a practice (or practices) exceeding the statutory obligation.

### 2.      The Practice in the Commonwealth

The parents offered the following evidence to establish that the practice across the Commonwealth is consistent with the Act:

- An e-mail sent by Kevin C. Brown, Associate Commissioner and General Counsel of the Kentucky Department of Education, which states that "it is my understanding that, in some districts, students who turn 21 during a school year continue to receive educational services, apparently without dispute, [which] suggests that there is a pattern or practice in Kentucky of extending educational services beyond a student's 21st birthday"[6]

- An excerpt from a policy manual from Jefferson County Public Schools, which provides that "[s]tudents who are under age 21 at the date of enrollment may enroll in a Kentucky public school," and that,"[e]ven though a student may turn 21 during the school year, Jefferson County Public Schools allows the student to finish that year"

- E-mails sent by representatives from various school districts, which indicate that some school districts allow disabled students who turn 21 during a school year to complete the entire school year or at least the semester in which they turn 21, while others end services when the child turns 21

---

[6] Mr. Brown also indicated that "[t]he Kentucky Attorney General has interpreted [the] language [of KRS 158.100] to mean that districts must provide special education services beyond the age of 21."  Presumably, he refers to the statement that "a local school system must continue to provide an appropriate educational program for an exceptional child even though beyond the age of compulsory attendance."  This statement, though, does not support Mr. Brown's conclusion, as the compulsory age of attendance in Kentucky is 16–not 21.  KRS 159.010.

(Doc. # 4-4, at 3); (Doc. # 4-6); (Doc. # 11-1).  In light of this evidence, as well as the administrative regulations, the Court acknowledges that some school districts allow disabled students to complete the entire school year in which they turn 21, but ultimately concludes the varying practices set forth are *consistently inconsistent* with the Act.  Even if the most extensive of these practices–continuing to provide education to students who turn 21 during a school year–was consistently followed throughout the Commonwealth, it is of no help to J.R., as she was allowed to complete school year in which she turned 21.[7]

In sum, Kentucky law does not follow the Act, and the practice throughout the Commonwealth is *consistently inconsistent* with it.  As a result, J.R. is no longer entitled to any further free appropriate public education, thereby rendering the "stay put" provision inapplicable to this case.  However, her parents have set forth an alternative justification for such relief, which is addressed below.

### D.    ALTERNATIVE JUSTIFICATION FOR ENTRY OF "STAY PUT" ORDER

In moving for automatic preliminary injunctive relief, J.R.'s parents also noted that they "amended [the] due process request to include violations which would potentially result in an award of compensatory education," thus purportedly providing an alternative justification for entry of a "stay put" order.  In support, they relied upon the Seventh Circuit's decision in *Board of Education of Oak Park & River Forest High School District 200 v.*

---

[7] J.R. turned 21 on February 28, 2013, and then remained at Dixie Heights High School until May 23, 2013–the day 2012-2013 academic school year ended.  The school district thus fulfilled any potential obligation it owed her.  *Cf. C.T. ex rel. M.T. v. Verona Board of Education*, 464 F. Supp. 2d 383, 386 (D.N.J. 2006) (recognizing that "New Jersey law follows the [Act], with the slight limitation that a qualified student who attains age 21 during a school year may continue to receive educational benefits only until the end of that school year," and thus concluding that the disabled child therein "was entitled to educational benefits until the end of the school year in which he turned 21").

*Illinois State Board of Education*, 79 F.3d 654 (7th Cir. 1996)

Presumably, the parents refer to the following excerpt from *Oak Park*:

The purpose of the stay-put provision is to give the child's parents the choice of keeping the child in his existing program until their dispute with the school authorities is resolved. Once the child reaches the age at which he no longer is entitled to the protection of the Act, the stay-put provision, which is intended to prevent the child from losing benefits to which he is entitled, loses its rationale. Its continued application would confer benefits beyond the limit set by Congress.

*The exception is where a claim for compensatory education is made.*

*Id.* at 659-660 (emphasis added). The Seventh Circuit, though, continued:

Compensatory education is a benefit that can extend beyond the age of 21. But to allow the stay-put provision, which operates automatically, to operate beyond the age of 21 would enable parents to obtain adult benefits for their child to which they had no entitlement by the simple expedient of filing a claim for compensatory education on the eve of their child's turning 21-exactly what happened here. The parents' lawyer concedes (indeed emphasizes, in his effort to show that the case is moot) that they have already received benefits in excess of what they are entitled to. They sought only two years of compensatory education, yet if the stay-put order is valid they are well into their third year.

We cannot think of a reason why Congress would want the stay-put provision used in this way, especially in a case in which the parents may be trying to get money for themselves as providers of compensatory education. The parents appeal to what they claim to be the plain meaning of the statute. They argue that in asking us to reject the district judge's reading the school district is asking us to rewrite the statute. It is not. With the exception of compensatory education, which is, as we said, indeed exceptional and nowhere expressly authorized by the statute, the statute's protections are limited to minors-the statutory domain is childhood disability-and so it is natural to presume that the limitation is carried into the stay-put provision, which is silent on the question.

Todd's parents express concern that unless the stay-put provision can follow the child into adulthood a school district that was afraid that a claim for compensatory education would be made might expel the child on his twenty-first birthday. It would do so, they argue, in the hope that once he was out of the system the parents would not pursue their claim for compensatory education because, if the claim was successful, to reap its

benefits the parents would have to interrupt their child's current program and reinsert him into the school system from which he had been expelled.  This seems rather a fanciful fear but in any event there is nothing to prevent parents who have a well-founded concern that the school district is employing such Machiavellian tactics from coupling their claim for compensatory education with a request for a preliminary injunction to prevent the school system from thwarting the claim by expelling the child.  That would be a garden-variety status-quo-preserving preliminary injunction.  They just are not entitled to the injunction automatically, by force of the stay-put provision.

*Id.* at 660 (citation omitted).

This passage does not support their alternative justification.  To the contrary, the Seventh Circuit makes clear that the potential for compensatory education does not entitle J.R. to entry of a "stay put" order.  This argument is without merit.[8]

## IV.    CONCLUSION

Accordingly, for the reasons state herein, **IT IS ORDERED** as follows:

(1)    Plaintiff's Motion for Automatic Preliminary Injunctive Relief (Doc. # 4) pursuant to the "stay put" provision of the Individuals With Disabilities Education Act is **DENIED**;

(2)    The Kenton County Defendants' Motion to Dismiss (Doc. # 6) is **DENIED AS MOOT**.

This 13th day of August, 2013.



Signed By:

_David L. Bunning_  *DB*

United States District Judge

---

[8] Undaunted by the Seventh Circuit's contrary holding, the parents referred to their request for compensatory education as their "ace in the hole" at the hearing, and pointed the Court to the decisions of the Supreme Court and the First Circuit in *Zobrest v. Catalina Foothills School District*, 509 U.S. 1 (1993) and *Pihl v. Massachusetts Department of Education*, 9 F.3d 184 (1st Cir. 1993), respectively.  As with *Oak Park*, neither of these cases support their alternative justification.